## SOUTHERN RAILWAY COMPANY v. DAVIS, ADMINISTRATOR.

[No. 5,076.   Filed January 5, 1905.]

1. PLEADING.—*Contributory Negligence.—Effect of Allegation of Freedom from, in Complaint.*—An allegation of freedom from contributory fault in a complaint, since the taking effect of the act of 1899 (Acts 1899, p. 58), adds nothing to such complaint, the burden of showing such being on the defendant.  p. 378.

2. RAILROADS.—*Highway Crossing.—Burden of Proof.—Due Care.*—The act of 1899 (Acts 1899, p. 58) does not change the legal requirements as to the care of a traveler in crossing a railroad, nor does it change the rule that the traveler is presumed to see what he could have seen and to hear what he could have heard.  p. 381.

3. SAME.—*Highway Crossing.—Death by Wrongful Act.—Contributory Negligence.—Interrogatories.*—Where the answers to interrogatories show that the decedent could have seen the approach of the train which killed her, in ample time to avoid any danger of colliding with it, if she had looked, and that she did not look to see whether the train was approaching while she walked nearly 100 feet to the track, such facts constitute such contributory negligence as will avoid any recovery of damages on account of defendant's negligence.  p. 382.

From Crawford Circuit Court; *C. W. Cook,* Judge.

Action by Jacob W. Davis, as administrator of the estate of Mary E. Davis, deceased, against the Southern Railway Company. From a judgment for plaintiff, defendant appeals. *Reversed.*

*A. P. Humphrey, J. D. Welman, Jerry L. Suddarth, C. L. Jewett* and *H. E. Jewett,* for appellant.

*Major W. Funk, John H. Weathers* and *William Ridley,* for appellee.

WILEY, J.—Appellee's decedent was killed at a grade crossing by coming in contact with a moving train on appellant's railroad, and this action was prosecuted to a successful termination in the court below to recover for damages resulting therefrom. The complaint was in one paragraph, to which an answer in general denial was filed. The cause was tried by jury, resulting in a general verdict assessing damages at $250, and with the general verdict the jury found specially by answering interrogatories submitted to them.

Appellant moved for a judgment on the answers to interrogatories notwithstanding the general verdict, which motion was overruled, and the overruling of that motion is the only error assigned. The facts stated in the complaint are sufficient to charge appellant with actionable negligence, and by the general verdict the jury determined that question against it.

1. The complaint also pleads certain facts bearing upon the conduct of the decedent immediately preceding her death in her attempt to cross appellant's tracks, and avers that she was using due care, and was without fault. Since the passage of the act of 1899 (Acts 1899, p. 58, §1, §359a Burns 1901), in actions of this character, a plaintiff is not required to allege or prove the want of contributory negligence on his or her part, nor on the part of the person for whose injury or death the action may be brought. It fol-

lows from the provisions of the statute that the allegation that the decedent was free from fault, and in no manner contributed to her death, adds no force to the complaint. In such case the statute lays the burden upon the defendant of proving contributory negligence as a matter of defense.

By its general verdict, the jury found that appellant had not proved contributory negligence, and reached the conclusion that the decedent was free from fault. It was only upon this theory that the general verdict could be based. Hence by the general verdict we find the two vital issues in the case resolved against appellant: (a) That appellant was guilty of the negligence charged, and (b) that the decedent was free from fault. This finding must stand unless the answers to interrogatories are in irreconcilable conflict with one or both of the issues thus determined by the general verdict.

The question presented by overruling the motion for judgment on the answers to interrogatories is not a difficult one, as will appear by the facts exhibited by the answers to interrogatories. The material facts disclosed by the answers may be fairly and briefly stated as follows: At the time of her death decedent was fifty-five years old, was in good health, and possessed good hearing and eyesight. She had for nine years lived near the Fredericksburg and Corydon road, which was a public highway, about a mile south of the railway crossing where she met her death, and during all these nine years she had passed over the crossing once or twice a week, and was familiar with it and its surroundings. The public highway referred to runs north and south, and intersects with appellant's main track and side-track, which run east and west at right angles. The crossing formed by the intersection of the highway and the railroad is in the small village of Ramsey, and such village contains only seventeen dwellings. There was no other railroad passing through Ramsey, and there was no other locomotive than that with which the decedent collided at or near that point,

The decedent was killed on the 12th of February, 1901, the day was clear and cold, and the wind was blowing from the northwest. She left her home about 8 o'clock in the morning, and went to White's store, 260 feet north of appellant's tracks and of the crossing where she was killed. At this store she made some purchases, and started back home on foot about 8:30 o'clock, and was carrying a can of coal-oil and other articles purchased. She had her neck and ears heavily wrapped to protect them from the cold. When she left White's store to start home she walked down the street about 152 feet to a place known as "Stierstetter's corner," where another store was located, ninety-eight feet from the railroad crossing. At this point, by looking east, she could have seen the approaching train for a distance of over 1,500 feet. She passed down to the crossing in a rapid walk, crossed over the side-track onto the main track, and was struck by the locomotive just as she was stepping over the south rail of the main track—that being the rail farthest from the place where she entered the crossing. The whistle on the locomotive was blown so loud that it was heard by a man about a mile from the village. If the decedent had stopped and listened for the approaching train, she could have heard it, unless prevented by the muffling of her ears. From the time she left Stierstetter's corner until she went upon the railroad track she did not stop and listen. Before going upon the main track, if she had looked east, she could have seen the approaching train in time to have avoided injury. From the time she left Stierstetter's corner until the moment she was struck by the locomotive, she did not, at any time, look toward the approaching train.

By the answers to interrogatories the question of appellant's negligence is eliminated so far as that question was determined by the general verdict, for there are no facts found that are irreconcilable with the general verdict as affecting appellant's negligence as charged. We need, therefore, give no further heed to that issue. As to the other

issue—that of the decedent's negligence contributing to her death—the facts specially found show that she did not observe the legal requirements as to the care she was bound to use before going into a place of danger, and such findings contradict the general verdict on that issue, and are in irreconcilable conflict with it.    Under such circumstances the rule is uniform in this State that the facts specially found will control, and the general verdict must yield thereto.

2.    The act of 1899, *supra,* does not abate the legal requirements as to the care a traveler crossing a railroad track must use, and it does not change the rule that it is presumed that the traveler saw and heard or was heedless of that which an ordinarily prudent person ought to have taken notice of. It is the rule in this jurisdiction that a grade crossing, to a person acquainted with its existence and surroundings, and who is about to pass on it, is a warning of danger, and, as a result, the law has marked out the *quantum* of care that should be observed.    *Malott* v. *Hawkins* (1902), 159 Ind. 127.    There are many statements in the decided cases to the effect that, under such circumstances, the traveler who intends to cross a railroad track at a highway crossing must look and listen.    *Cincinnati, etc., R. Co.* v. *Howard* (1890), 124 Ind. 280, 8 L. R. A. 593, 19 Am. St. 96; *Louisville, etc., R. Co.* v. *Stommel* (1890), 126 Ind. 35; *Smith* v. *Wabash R. Co.* (1894), 141 Ind. 92; *Engrer* v. *Ohio, etc., R. Co.* (1895), 142 Ind. 618; *Pittsburgh, etc., R. Co.* v. *Fraze* (1898), 150 Ind. 576, 65 Am. St. 377.    This rule especially applies to a case of the character we are considering.    Exceptional circumstances may also require the traveler to stop before entering upon the crossing, although this proposition generally presents itself as a mixed question of law and fact.    *Malott* v. *Hawkins, supra;* 3 Elliott, Railroads, §1167; *Cincinnati, etc., R. Co.* v. *Howard, supra; Chicago, etc., R. Co.* v. *Thomas* (1900), 155 Ind. 634.

As a correlative of the propostion that the traveler must look and listen, it results that the law will assume that he

actually saw what he could have seen if he had looked, and heard what he could have heard if he had listened. *Malott v. Hawkins, supra; Pittsburgh, etc., R. Co. v. Fraze, supra.* These rules of law laid upon the decedent the duty of looking and listening for the approaching train before casting herself into a place of known danger.

3.    The facts specially found show, without conflict, that she wholly disregarded the requirements of the law of travelers about to cross a railroad at a highway crossing.    We are brought face to face, by the answers to interrogatories, with two facts which affirmatively show that the decedent was guilty of contributory negligence, namely (a) that she could have seen the approaching train in ample time to have avoided colliding with it, and (b) that she did not look to see if a train was approaching, while she walked a distance of nearly one hundred feet, immediately before entering upon the tracks.    These facts can not, upon any reasonable hypothesis, be reconciled with the general verdict, whereby the jury found she was free from contributory negligence.    Two essential elements of contributory negligence are want of ordinary care by the injured party, and a causal connection between such want of care and the injury. *Salem-Bedford Stone Co. v. O'Brien* (1894), 12 Ind. App. 217.    The facts specially found show that the decedent did not use ordinary care, and that her failure to do so was the proximate cause of the accident.    A person must use his own faculties so as to avoid danger, if he can reasonably avoid it; and the failure to do so, if it contributes proximately to his injury, will prevent a recovery for resulting injuries. *Salem-Bedford Stone Co. v. O'Brien, supra.*    It is needless to multiply authorities in support of the rules of law we have been considering.    As the answers to interrogatories show that the decedent was guilty of contributory negligence, they are in irreconcilable conflict with the general verdict on that issue, and hence the general verdict

must yield to the more potent force of the facts specially found.

Judgment reversed, and the trial court is directed to sustain appellant's motion for judgment on the answers to interrogatories.